**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| United States of America, | |
| Plaintiff, | |
| v. | **Criminal No. 12-0162(GMM)** |
| William Berrios-Cruz, | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court is Defendant William Berrios-Cruz's (Defendant) *Motion to Reduce Sentence*. (Docket No. 107). The motion is DENIED.

**I.   RELEVANT PROCEDURAL BACKGROUND**

Pursuant to the terms and conditions of a plea agreement, on May 1, 2013, Defendant pled guilty to production of child pornography (Count 8 of the Superseding Indictment) —a class "B" felony— charging him of having employed, used, persuaded, induced, enticed and coerced a minor female to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct from the years 2009 to 2012, in violation of 18 U.S.C. § 2251(a). (Docket No. 63).

According to the Presentence Investigations Report, the Parties agreed on the following guideline calculations based on the United States Sentencing Commission, Guidelines Manual, §3E1.1 (2013)("Guideline(s)"): (1) the Guideline for this type of offense

Criminal No. 12-0162(GMM)
Page -2-

involving the production of child pornography has a base offense level of 32 pursuant to §2G2.1; (2) as the offense involved a minor who had not attained the age of 16 years, a two-level increase was warranted under Guideline §2G2.1(b)(1)(B); (3) since the offense involved the commission of a sexual act or sexual contact, two levels were added pursuant to Guideline §2G2.1(b)(2)(A); (4) the offense involved material that portrayed sadistic conduct or other depictions of violence, therefore, a four-level increase was applicable under Guideline §2G2.1(b)(4); and (5) as Defendant was the victim's godfather and the victim was in his custody, care, or supervisory control, two levels were increased under Guideline §2G2.1(b)(5). Furthermore, the total adjusted level was 42, with a four-level enhancement for violation of §4B1.5(b)(1) (engaging in a pattern of activity involving sexual conduct) and three points deducted for timely acceptance of responsibility pursuant to Guideline §3E1.1(a) and (b). Pursuant to Chapter 5, application note number 2 of the Guidelines, the total offense level was 43. (Docket Nos. 82 and 83).

In sum, this violation carries a mandatory minimum sentence of 15 years of imprisonment. Based on a total offense level of 43 and a criminal history Category of 1, the Guideline imprisonment range in this case was <u>life</u>. The Guideline term of imprisonment, however, was 360 months. After reviewing the advisory guideline calculations and evaluating the § 3553(a) factors, on December 5,

Criminal No. 12-0162(GMM)
Page -3-

2013, the Court sentenced Defendant to 300 months of imprisonment

and 15 years of supervised release (Docket Nos. 91, 93, and 106).

The Court supported its sentence by stating:

> The Court adopts the recommendation of the United
> States, given the grave nature of the sadistic criminal
> conduct, which involved this young victim for a long
> period of time in sexually explicit conduct, conduct
> that stripped her of her innocence and thrust her entire
> family in an emotional turmoil upon discovering the
> crime that was committed against their young daughter
> and sister.
>
> The Court viewed the videos in this case. Those videos
> clearly depict the harm and the abuse upon that young
> girl, a starry-eyed girl, defenseless, against the
> physical prowess of the defendant.
>
> The Court also notes that the defendant was indeed a
> police officer with 30 years of service at the time that
> he committed the offense. He chose as his victim a child
> who trusted him as part of her own family.
>
> The Court finds that the defendant poses a grave risk to
> other minors, especially young girls, and he must be
> deterred from inflicting pain and injury upon other
> children, and he must receive just punishment for his
> criminal behavior.

(Docket No. 99 at 14-15).

The Court also considered Defendant's health condition at the

time of imposing the sentence: "Defendant mentioned suffering from

gout, arthritis, high blood pressure and diabetes. He has no prior

criminal convictions." Id. at 14 ¶ 13-14. To date, Defendant has

served approximately 11 of the 25-year sentence imposed by the

Court.

Criminal No. 12-0162(GMM)
Page -4-

On February 27, 2023, Defendant filed a request for Compassionate Release/Reduction in Sentence before the Bureau of Prisons ("BOP") based on his medical conditions. (Docket No. 114, Exhibit 2). On March 15, 2023, the BOP denied Defendant's request stating: "Your case was reviewed and determined that although you have medical concerns, they are not debilitating." Further, the BOP concluded: "You are able to address your normal needs" and "You are able to walk to Health Services. You are able to walk to Food Service. You are able to address your normal living needs." Id.

On June 1, 2023, Defendant filed his motion for compassionate release seeking a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and (ii) and United States v. Ruvalcaba, 2022 U.S. App. LEXIS 4235, 2022 WL 468925 (1st Cir. 2022). (Docket No. 107). Defendant alleges that his health conditions —high blood pressure, diabetes, and toe contracture— continue to decline and that his incarceration makes him more vulnerable to the complications of the COVID-19 pandemic, which poses a greater risk of death. Defendant also argues that the surgery on his right great toe is a long-term medical condition that requires long-term care that the BOP is not providing. He attests that he qualifies for compassionate release since "the joint of his great toe was seriously infected and recently amputated" and he is "basically 24 hours attached to a wheelchair because it adversely affected his

Criminal No. 12-0162(GMM)
Page -5-

balance and stability." Id. at 8. Further, he alleges that his medical condition of high blood pressure and diabetes qualify him as someone who is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" and who, without that care, "is at risk of serious deterioration in health or death" according to new subcategories of "Medical Circumstances of the Defendant" included in the Proposed Amendment to Section 1B1.13. Id. at 9.

On July 10, 2023, the Government filed *Response in Opposition to Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 Pandemic.* (Docket No. 114). The Government opposes Defendant's motion. It argues that Defendant has neither established extraordinary and compelling circumstances, nor that the factors set forth at 18 U.S.C. § 3553(a) justify his release. Specifically, the Government avers that the mere existence of COVID-19 does not provide a basis for sentence reduction. After all, the Defendant is 65 years old, and his medical conditions are "not extreme, critical, or unusual even if contracting the Covid-19 virus" especially when he has been vaccinated with two doses of the Moderna vaccine. Id. at 3-6. Furthermore, the Government states that Defendant's medical records reflect that the medical staff at BOP have taken the necessary steps to control his high blood pressure and diabetes condition. In addition, they assert that Defendant's record shows no evidence of amputation and that, on

Criminal No. 12-0162(GMM)
Page -6-

the contrary, it reflects he had an arthroplasty surgery to fix a toe bone, from which he is recovering after receiving medical attention from the BOP. Id. at 6-7. Also, the Government opposes Defendant's motion by arguing the BOP denied his request for compassionate release because his medical conditions were not debilitating. Id. at 7. Finally, the Government argues Defendant still poses a significant danger to the safety of the community and that he has not provided evidence that shows otherwise.

## II.  LEGAL STANDARD

Typically, a court cannot modify an imprisonment term once imposed. *See* 18 U.S.C. § 3582(c). Yet, it may grant compassionate release to a defendant subject to certain requirements. Id. § 3582(c)(1)(A). Prior to the passage of the First Step Act in 2018, compassionate release could only be granted upon motion by the Director of the BOP. *See* United States v. Saccocia, 10 F.4th 1, at 3 (1st Cir. 2021). The First Step Act made it possible for defendants to file a motion for compassionate release if they first apply to the BOP. Id. at 4.

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has "fully exhausted all administrative rights to appeal a failure of" the BOP to bring a motion for reduction of sentence on his behalf or if thirty (30) days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Even so, there

**Criminal No. 12-0162(GMM)**
**Page -7-**

must still be "extraordinary and compelling reasons" warranting a

reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Per First Circuit

precedent, extraordinary and compelling reasons are "(A) medical

reasons; (B) age; (C) family circumstances; and (D) '[o]ther

[r]easons[.]'" Saccoccia, 10 F.4th at 7 (*quoting* U.S.S.G § 1B1.13).

In addition, the Court may not modify an imposed term of

imprisonment unless it finds

> the defendant is at least 70 years of age, has served at
> least 30 years in prison, pursuant to a sentence imposed
> under section 3559(c), for the offense or offenses for
> which the defendant is currently imprisoned, and a
> determination has been made by the Director of the Bureau
> of Prisons that the defendant is not a danger to the
> safety of any other person or the community, as provided
> under section 3142(g) and that such a reduction is
> consistent with applicable policy statements issued by
> the Sentencing Commission. . .

*See* 18 U.S.C. § 3582(c)(1)(A)(ii).

After Saccocia, the First Circuit decided whether district

courts were bound by the Sentencing Guidelines Policy Statements

or measures for compassionate release. In United States v.

Ruvalcaba, the First Circuit held that "district courts – when

adjudicating prisoner-initiated motions for compassionate release

– have discretion, unconstrained by any policy statement currently

in effect, to consider whether a prisoner's particular reasons are

sufficiently extraordinary and compelling to warrant compassionate

release." United States v. Ruvalcaba, 2022 U.S. App. LEXIS 4235,

at *18, 2022 WL 468925 (1st Cir. 2022) (citation omitted). However,

this does not mean that a district court's discretion is unbound, as courts "remai[n] circumscribed by statutory standards which require reasons that are both 'extraordinary and compelling.'" Id. (*citing* United States v. Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2021)) (emphasis added).

At the beginning of the COVID-19 pandemic, courts found that the increased risk of contracting the virus in prison and a defendant's underlying serious health conditions can satisfy the "extraordinary and compelling" standard. *See*, e.g., United States v. Trotter, No. 14-20273, 2023 WL 4535055 (E.D. Mich. July 13, 2023); United States v. Mitchell, 472 F. Supp.3d 403, 407 (E.D. Mich. 2020) (Type 2 diabetes and hypertension, in conjunction with COVID-19 pandemic, constituted extraordinary and compelling reasons); United States v. Hargrove, 2021 WL 509905, at *2 (E.D. Mich. Feb. 11, 2021) (heart failure, type 2 diabetes, and severe obesity, among other ailments). However, as pandemic conditions evolved, these factors were less likely to satisfy the "extraordinary and compelling" standard. In particular, the widespread availability of vaccines ameliorated the risk of severe health outcomes. Recognizing this, courts have concluded that "a defendant's incarceration during the COVID-19 pandemic – when the defendant has access to the COVID-19 vaccine – does not present an 'extraordinary and compelling reason' warranting a sentence reduction." United States v. Lemons, 15 F.4th 747, 751 (6th Cir.

Criminal No. 12-0162(GMM)
Page -9-

2021); *see also* <u>United States v. Traylor</u>, 16 F.4th 485, 487 (6th Cir. 2021) (finding no extraordinary and compelling circumstances based upon serious health conditions when inmate received COVID-19 vaccine). "The CDC advises that while vaccinated individuals may still contract COVID-19, they are much less likely to experience severe symptoms than people who are unvaccinated." <u>United States v. Kingbird</u>, No. 19-cr-0054(1), 2023 WL 136599, at *2 (D. Minn. Jan. 9, 2023) (internal quotations omitted).

In determining whether Defendant is entitled to compassionate release, the Court must consider the current and potential prospective impact of the pandemic together with an individualized assessment of relevant factors as they pertain to him. These factors include: (1) the Defendant's age and health, including whether the Defendant has any health conditions that place him at increased risk of serious illness or death from COVID-19; (2) the health, safety, and living conditions at the facility where the Defendant is housed, any specific crowding issues, and the specific steps taken by the facility in response to the spread of COVID-19; and (3) the crime of conviction and length of his remaining sentence. <u>United States v. Rivera</u>, No. CV 19-40018-TSH, 2023 WL 4471983, at *2 (D. Mass. July 11, 2023).

Therefore, the Court will review the record to determine whether Defendant has established extraordinary and compelling reasons for a sentence reduction.

Criminal No. 12-0162(GMM)
Page -10-

## III. DISCUSSION

Defendant is 65 years old. He is currently incarcerated at Allenwood Low FCI in Pennsylvania. He has served nearly 11 years of his 25-year sentence for producing child pornography. At the time of his sentencing, the Court acknowledged and considered his medical conditions of high blood pressure and diabetes. The BOP, upon review and consideration of his medical record, denied Defendant's request for compassionate release. It concluded that Defendant's medical conditions were not debilitating, that his mobility was not affected, and that he is able to address his needs. Defendant now requests the Court to grant a compassionate release citing a combination of pre-existing conditions with the COVID-19 pandemic as a sufficient extraordinary and compelling basis for his release.

The Court disagrees. There is a marked absence of extraordinary and compelling reasons entitling Defendant to immediate release or a reduction in his sentence. Defendant's ailments, while placing him within the category of persons at higher risk from COVID-19, are insufficient. The BOP at Allenwood Low FCI has taken adequate steps to avoid or control any potential outbreaks, as data reflects 67% of the inmate population is fully inoculated, there are no open cases, and only 2 COVID-19 related deaths have been reported. *See* Federal Bureau of Prisons, BOP COVID-19                                                      Statistics

Criminal No. 12-0162(GMM)
Page -11-

https://www.bop.gov/about/statistics/statistics_inmate_covid19.j
sp (last visited July 27, 2023). Moreover, the data reflects that
if the individual is vaccinated, the likelihood of suffering severe
symptoms is less likely. Here, Defendant has been vaccinated
against COVID-19 while in BOP custody (two doses of the Moderna
vaccine). (Docket No. 114, Exhibit 1). Further, the BOP has
addressed his pre-existing medical conditions of high blood
pressure and diabetes by providing medication and monitoring his
recovery after his successful toe surgery.  There is no indication
that Defendant is unable to attend to himself normally within his
living quarters.

In addition, Defendant bases his request on 18 U.S.C. §
3582(c)(1)(A)(ii), applicable only to defendants who are at least
70 years of age and have served at least 30 years in prison.
Moreover, Defendant bases his request on proposed amendments to
Guidelines which have not been approved. Regardless, again,
Defendant was unable to demonstrate extraordinary and compelling
circumstances warranting compassionate release.

In addition, the underlying nature of Defendant's conviction,
does not justify departing from the Court's 300-month prison
sentence. The Court was clear when it reflected the seriousness of
Defendant's crime —production of child pornography— involving a
young female victim at sentencing: "the Defendant poses a grave
risk to other minors, especially young girls, and he must be

deterred from inflicting pain and injury upon other children, and he must receive just punishment for his criminal behavior." (Docket No. 99 at 15).

The Court is not persuaded by Defendant's assertion that his "new" extraordinary and compelling circumstances inhibit him from being a danger to the community as they have condemned him to a life filled with limitations.  The Court's assessment at sentencing was that Defendant is dangerous, and his release would endanger the community. No evidence has been submitted to vary the Court's then well-founded and legally sound judgment.

Also, Defendant has served less than half of his sentence. *See* United States v. Ruffin, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have recognized that some of the § 3553(a) factors, including the 'need to provide just punishment' and 'to reflect the seriousness of the offense,' allow courts to consider the 'amount of time' that a defendant has served on a sentence when deciding whether to grant a sentence reduction.").

Under these circumstances and considering the § 3553(a) factors, any further reduction would not be commensurate with the seriousness of the offense or be consistent with the goals of sentencing, including specific and general deterrence, promoting respect for the law, and just punishment.

**Criminal No. 12-0162(GMM)**
**Page -13-**

## IV. CONCLUSION

For these reasons, the Court DENIES Defendant's *Motion to Reduce Sentence*.

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 28,2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE
